UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

WYNN'S EXTENDED CARE, INC.,
  Plaintiff and Counter-defendant

v.           Case Number: 5:13-cv-00114

PENNY L. BRADLEY,
  Defendant and Counter-plaintiff.

## ANSWER AND COUNTERCLAIM

Defendant Penny L. Bradley (Bradley) answers Wynn's Extended Care, Inc.'s (Wynn's) Complaint and asserts her Counterclaim as set forth below.

1.  Admitted. Bradley admits that complete diversity exists between the parties. Bradley admits that the amount in issue against Wynn's exceeds the $75,000.00 threshold for diversity jurisdiction.

2.  Admitted.

3.  Admitted.

4.  Admitted.

5.  Admitted that Wynn's state of incorporation and its principal place of business are not in Virginia and that for diversity jurisdiction, Wynn's is not a citizen of Virginia.

6.  Admitted.

7.  Admitted.

8.  Admitted.

9.  Admitted that Exhibit 2 was signed by Bradley but denied she completed it. The document was completed by Wynn's agent at Armstrong Auto Sales (Armstrong Auto), and

Wynn's agent represented that it was a contract for coverage that would necessarily be part of the sale of the car.

10. Admitted.

11. Admitted that the car was never eligible for coverage even though Wynn's agent contracted with Bradley to provide that coverage, and admitted that Wynn's then refused to honor the contract.

12. Admitted that the letter was sent but the date it was sent is not known to Bradley.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Denied that Wynn's did not agree to arbitrate; admitted that it filed a Motion to Dismiss in the arbitration.

24. Denied.

25. Admitted.

26. Admitted that coverage was not provided and that within five days of the sale Wynn's decided not to honor the contract its agent made.

27. Admitted.

28. Denied. Bradley agrees to bring her claims against Wynn's in this Court, and the Counterclaim below asserts her claims against Wynn's

29. Denied.

30. Denied. Bradley first offered to dismiss Wynn's from the arbitration if Wynn's would agree her claims could go forward in state court. (See attached correspondence to Wynn's counsel, Exhibit A). Wynn's did not agree and instead chose this Court as the forum to decide issues. Accordingly, Bradley agrees to bring her claims against Wynn's in this Court.

## COUNTERCLAIM

31. On August 21, 2012, Bradley went to Armstrong Auto to look at buying a vehicle; she wanted to buy a car that got very good gas mileage because she commutes from Stanley, Virginia to Harrisonburg, Virginia for her job.

32. She saw a 2007 Honda Civic Hybrid, VIN JHMFA36257S010568, that was for sale.

33. She liked the idea of a hybrid vehicle because of the gas mileage.

34. She discussed purchasing that car with Travis Armstrong, who worked as a salesman for Armstrong Auto and through Armstrong Auto as an agent for Wynn's.

35. She told Travis Armstrong that she wanted to know about the warranty because she wanted to buy a car only if it came with a warranty.

36. Travis Armstrong told Bradley that she would get a 24 months/24,000 miles warranty.

37. He also told her that she would definitely need that warranty for a hybrid because if the battery ever needed replacing then it would cost thousands of dollars.

38. She agreed to buy the car because it would come with this warranty.

39. Although the discussions with Travis Armstrong implied that a 24 months/24,000 miles warranty was part of the sales price of the car, Travis Armstrong knew that he was not providing an extended warranty but would add a Wynn's service contract for an extra $1,580.00 charge.

40. Bradley agreed to buy the car because of the 24 months/24,000 miles warranty protection that Mr. Armstrong represented was included in the transaction.

41. Bradley bought the car on a Retail Installment Contract, a true copy of which is attached to Wynn's Complaint as Exhibit 1.

42. As stated on that contract, Bradley provided a down payment of $1,300.00.

43. Pursuant to the express terms of the Retail Installment Contract, under the all capital and bold heading, OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT, Bradley was provided 24 months/24,000 miles coverage as part of the transaction.

44. The charge for the coverage was included in the amount financed, and under the terms of the agreement, Bradley was assessed 24.99% interest starting the day of sale on this amount.

45. To ensure that Bradley knew she was getting coverage as part of the transaction, Travis Armstrong had her initial between the cost of this coverage ("1,580.00") and its term ("24 MONTHS 24,000 MILES"), but did not explain that this was in addition to the price of the car previously quoted.

46. At the time of this financing, Bradley reasonably believed that she was purchasing a car with 24 months/24,000 miles warranty coverage.

47. At the time of the financing to Bradley, Wynn's knew that no extended warranty or service contract would be provided on the hybrid vehicle because Wynn's would not provide coverage on a hybrid vehicle.

48. Wynn's business model is to have its agents like Armstrong Auto and Travis Armstrong sell its product to consumers at the time a car is sold.

49. Wynn's knows that its agents use the presence of Wynn's coverage as part of the inducement for a consumer to agree to buy a car.

50. Wynn's knows that its agents represent that its coverage is available on cars even when the coverage is not available.

51. Wynn's does not stop its agents from representing that coverage is available on cars even when that coverage is not available.

52. Wynn's does not require its agents to check with Wynn's before representing that a specific vehicle is allowed to be covered.

53. Wynn's has no process to allow dealers to easily check with Wynn's before representing that a specific vehicle is allowed to be covered.

54. Because Wynn's excludes coverage for certain types of vehicles, including hybrids, it would be possible Wynn's to have a website available for a dealer to easily put in a vehicle identification number and check whether coverage is automatically excluded.

55. Instead of stopping agents from representing that coverage is available when it is not, Wynn's process is to determine after the sale whether a car is actually eligible for coverage.

56. Wynn's is one of the most sophisticated service contract providers in the country and is owned by Phoenix American Companies; the Chief Executive Officer and Chairman of the Board of Phoenix American Companies is the President of the Service Contract Industry Council, President of the Florida Service Agreement Association, and President of the Guaranteed Asset Protection Alliance.

57. When Wynn's determines after a sale that a car is not eligible for coverage, it simply cancels the coverage.

58. When Wynn's cancels coverage because a car was never eligible, it does not instruct its dealers to renegotiate the sale of the car nor to determine whether the consumer even wants the car without the coverage.

59. As a result, consumers like Bradley are then stuck in a contract for car with no coverage even though the consumer bought the car in reliance on the existence of such coverage.

60. In addition to the charge of $1,580.00 for the Wynn's contract, Bradley was also charged $39.50 as tax on that amount.

61. When Wynn's cancels coverage after a consumer has been charged, it does not rebate to the consumer the taxes that were assessed on the coverage.

62. As a result, not only does the consumer have a car with no coverage, but the consumer is charged tax on that nonexistent coverage.

63. After Bradley received the letter dated August 28, 2012, she did exactly as instructed by the letter and contacted Wynn's agent, Travis Armstrong at Armstrong Auto.

64. Travis Armstrong assured her that she had the coverage he had promised her.

65. Travis Armstrong told her the August 28, 2012, letter was an error and should be ignored.

66. No one informed her that Wynn's had sent the sale price of the service contract to Credit Acceptance Corporation.

67. After the sale of the car, Bradley made five payments of $401.93, for a total of $2009.65.

68. When she made these payments she reasonably thought she had coverage by Wynn's because its agent told her the coverage was still in place and she had no information of any rebate being applied to her account.

69. Her last payment was on January 20, 2013.

70. She then discovered that the car needed significant repairs, including the hybrid battery and/or battery pack due to severe battery pack deterioration.

71. Those repairs would cost thousands of dollars.

72. She went to Armstrong Auto and asked for the repairs to be made pursuant to the 24 months/24,000 miles coverage.

73. Because no such coverage was ever available as part of the transaction, the repairs were not performed, and Armstrong Auto refused to make such repairs.

74. By letter from counsel dated February 27, 2013, Bradley notified Armstrong Auto and Credit Acceptance Corporation that she was cancelling the transaction, and requested refund of all her payments made.

75. Since that time, Bradley has not used the vehicle, and the vehicle has been delivered to the possession of Armstrong Auto.

76. Neither Armstrong Auto nor Credit Acceptance Corporation has refunded, or agreed to refund, the payments made.

77. Credit Acceptance Corporation is demanding that Bradley pay the full amount it claims to be due under the Retail Installment Contract.

78. If Wynn's agent had not represented that the car would be covered by the Wynn's coverage, no sale would have occurred.

79. If Wynn's had in place a system for a dealer to check whether coverage existed for a specific type of vehicle, the sale would not have occurred.

80. If Wynn's policy after it canceled the coverage required Armstrong Auto to renegotiate whether the sale of the car would even occur, then Bradley would not have agreed to keep the car.

81. If Wynn's rebate process had included the tax on the service contract, then Bradley would not have been charged taxes she did not owe.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Fraud/Constructive Fraud

82. Wynn's agent misrepresented both orally and in writing that 24 months/24,000 miles coverage was included in the transaction.

83. Wynn's authorized that representation.

84. Wynn's agent made that representation so that Bradley would agree to buy the car, sign the Retail Installment Contract, and have the charge for the Wynn's contract added to the principal balance.

85. Bradley reasonably relied on that misrepresentation by signing the credit contract and by paying the $1,300.00 down payment.

86. Wynn's misrepresented that the August 28, 2012, letter was in error and that it should be ignored.

87. Bradley reasonably relied on that misrepresentation by continuing to believe the car was covered and by making the next five monthly payments.

88. Bradley was harmed by her reliance on both these misrepresentations because she was never provided any 24 months/24,000 miles coverage and her car needed substantial repairs.

89. Bradley was further harmed by her reliance on both these misrepresentations because she was charged taxes that were never refunded.

90. Wynn's actions were willful, malicious, and in reckless disregard of Bradley's rights sufficient to justify that Wynn's be assessed punitive damages.

91. In the alternative to the misrepresentations having been made knowingly or intentionally, they were made innocently or negligently so as to allow for a claim of constructive fraud.

## SECOND CAUSE OF ACTION
### Violation of the VCPA

92. Wynn's was a supplier and Bradley was a consumer in a transaction regulated by the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq*.

93. Wynn's, through its agent, violated Va. Code Ann. § 59.1-200(A)(5), (8) and (14) by charging for coverage that was not provided, by misrepresenting that coverage was provided, by misrepresenting that the August 28 letter was in error, and by not refunding the tax on the coverage not provided.

94. Wynn's violations were willful.

95. In the alternative of the violations being willful, the violations were not the result of bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid a violation.

96. If the violations were unintentional under Va. Code Ann. § 59.1-207, Bradley is still entitled to restitution and payment of attorney's fees and court costs.

## THIRD CAUSE OF ACTION
### Violation of the Magnuson-Moss Warranty Trade Improvement Act

97. A service contract was offered, accepted, and paid for in this transaction.

98. It was offered by Armstrong Auto acting as agent for Wynn's, and was paid for by the inclusion of its charge, plus tax, in the principal amount of the credit.

99. Wynn's agent represented the car was covered by the service contract and then represented that the August 28 letter should be ignored.

100. The sale of the vehicle was dependent on such coverage being provided.

101. The service contract was a necessary part of the transaction and cannot be separated from the sale of the vehicle.

102. Wynn's failed to comply with its obligations under the service contract.

103. Under 15 U.S.C. § 2310(d), Bradley is entitled to bring this action to recover damages, equitable relief, and cost and expenses, including attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Bradley prays that this Court enter judgment against the Defendant ,as follows, and that the Court:

1. Assume jurisdiction of this case;

2. Award actual damages under the tort claim, Magnuson-Moss claim, and the VCPA claim;

3. Award minimum statutory damages of $500.00 for each violation of the VCPA if higher actual damages are not awarded;

4. Award treble actual damages, or at minimum $1,000.00 for each willful violation of the VCPA;

5. Assess punitive or exemplary damages against Wynn's in an amount sufficient to ensure that Wynn's will take steps to stop its agents from misrepresenting coverage availability and to ensure that it changes its practice of not refunding taxes that have been charged and paid, and requires its agents to renegotiate a deal when coverage is denied or unavailable;

6. Award Bradley her costs and reasonable attorneys' fees in accordance with the VCPA, the Magnuson Moss Warranty Trade Improvement Act, and the common law of fraud; and

7. Award such other relief as the Court deems appropriate.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

PENNY L. BRADLEY

By: _s/Timothy E. Cupp_
     Counsel

Timothy E. Cupp  VSB No. 23017
Cupp & Cupp, P.C.
1951-D Evelyn Byrd Avenue
P.O. Box 589
Harrisonburg VA  22803-0589
Phone: (540) 432-9988
e-mail: cupplaw@comcast.net

Thomas D. Domonoske, VSB No. 35434
461 Lee Avenue
Harrisonburg, Virginia 22802
(540) 442-7706
e-mail: tomdomonoske@earthlink.net
Counsel for Bradley

CERTIFICATE

       I hereby certify that on the 22nd day of January 2014, I electronically filed the foregoing Answer and Counterclaim through the CM/ECF PACER system which will send an electronic copy thereof to the following counsel of record for the Plaintiff: Virginia M. Sadler, Jordan, Coyne & Savitts, LLP, 10509 Judicial Drive, Suite 200, Fairfax, Virginia 22030.

                                                s/Timothy E. Cupp