IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

WYNN'S EXTENDED CARE, INC.,

    Plaintiff,

v.                                               CIVIL ACTION NO. 5:13-cv-00114-MFU

PENNY L. BRADLEY,

    Defendant.

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

Counterclaim Defendant Wynn's Extended Care, Inc. (hereinafter "Wynn's"), by counsel, respectfully submits the following points and authorities in support of its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.**     **STATEMENT OF THE CASE**

Counterclaim Plaintiff Penny Bradley (hereinafter "Bradley") originally filed suit in this Court against Armstrong Auto Sales, Inc., Travis Armstrong and Credit Acceptance Corporation arising out of the purchase of a 2007 Honda Civic Hybrid from Armstrong Auto Sales, Inc. The case was styled *Bradley v. Armstrong Auto Sales, Inc. et al.,* Case No. 5:13-cv-00054. Upon a motion to compel arbitration, this Court dismissed the case and Bradley refiled her claims with JAMS Arbitration. Bradley then named Wynn's as a defendant in the arbitration proceedings. Wynn's filed a complaint to enjoin the arbitration with this Court on December 12, 2013. Bradley dismissed her arbitration proceedings against Wynn's and now brings a counterclaim for fraud/constructive fraud, violations of the Virginia Consumer Protection Act ("VCPA") and

violations of the Magnuson-Moss Warranty Act arising out of the purchase of a vehicle from Armstrong Auto Sales, Inc.

## II. STATEMENT OF FACTS

On or about August 21, 2012, Penny Bradley purchased a 2007 Honda Civic Hybrid vehicle (hereinafter the "Vehicle") from Armstrong Auto Sales, Inc. ("Armstrong"). At the time of purchase, Bradley executed a Retail Installment Sales Contract. (Compl. Ex. 1)[1]. At the time of purchase, Armstrong offered Bradley a Wynn's Plus used vehicle extended service contract ("VSC"). Armstrong and Wynn's had previously entered into a Wynn's Extended Care, Inc. Dealer Agreement on April 4, 2012 ("Dealer Agreement"), whereby Armstrong is an independent contractor offering the Wynn's products for sale. (Attach. 1.)[2]

Bradley caused to be completed then signed an application for a Wynn's Plus Extended Vehicle Service Contract ("Application"). (Attach. 2).[3] Bradley elected to have the Application purchase price of $1,580.00 included on the Retail Installment Sales Contract, whereby the finance company would submit payment to Wynn's on Bradley's behalf for the Application. Bradley admits that Wynn's was not a party to the Retail Installment Sales Contract. (Countercl. ¶25).

The front page of the Application, which Bradley signed, states "[t]his document is an Application for a service contract. If this application is accepted by [Wynn's], then it will

---

[1] Citations to Wynn's original Complaint are designated "Compl." Citations to the Counterclaim are designated "Countercl."
[2] Although the general rule is that courts may not consider attachments in ruling on a 12(b)(6) motion, the court may consider a document attached to the Complaint or Motion if it is "integral to the complaint and authentic." *Earl v. Norfolk State Univ.*, 2014 U.S. Dist. LEXIS 18583, *9 (E.D. Va. 2014). As Bradley relies on the bald conclusory statement that Armstrong was Wynn's agent, this document is integral to her contentions.
[3] Originally attached to Wynn's Complaint to Enjoin Arbitration.

2

become your contract." (Attach. 2). In the signature block of the Application, directly above Bradley's signature, the text states:

> It is understood that the purchase of this Vehicle Service Contract is NOT a requirement to purchase or obtain financing. I understand that the above information may be subject to verification and that this Application may be rejected if any of the above information is incorrect or if the above Vehicle is not eligible for the term or coverage written as determined by the Administrator in its sole discretion.

(Attach. 2). The Application text further states within the signature block: "I have agreed to and acknowledge . . . the coverage provided . . . the exclusions to coverage . . . and have read and understood said provisions." (Id). In the Application, exclusion 22 of the "Exclusions – What This Contract Does Not Cover" states that coverage cannot be provided for "Other normal maintenance services and parts, including, without limitation . . . *batteries* . . . ." (Attach 2, p. 2 emphasis added). Bradley admits that she signed the Application, which contains the above terms and conditions. (See Countercl. ¶9).

On August 28, 2012, seven days after the purchase of the Vehicle from Armstrong, Wynn's notified Bradley that the Vehicle was ineligible for coverage and that the Application was voided. (Compl. Ex. 3). Bradley received the notice via certified mail on September 8, 2012. (Compl. Ex. 3). Bradley admits the foregoing facts in her Answer and Counterclaim. (See Countercl. ¶¶12-13). Bradley also admits that the Vehicle was not eligible for coverage under the Application or a VSC. (Countercl. ¶ 11). Wynn's refunded the purchase price of the VSC to the lienholder of record.

At some point after January 20, 2013, Bradley discovered that her Vehicle would require repairs including the battery and/or battery pack due to deterioration. (Countercl. ¶ 70.) Bradley

3

took the Vehicle to be serviced at Armstrong and requested that the repairs be made. (Countercl. ¶ 72.) Armstrong refused to make the repairs. (Countercl. ¶ 73.)

## III. LEGAL STANDARD

A complaint which fails to state a claim upon which relief can be granted should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the Court is guided to accept as true all well-pleaded allegations and must construe the factual allegations in the light most favorable to the plaintiff. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994). However, the Court need not accept the legal conclusions drawn from the facts or unwarranted inferences, unreasonable conclusions or arguments. *Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). If it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief, a motion to dismiss should be granted. *See Mylan Labs, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). Even with this generous standard, the Counterclaim fails to state claims upon which relief can be granted and the Counterclaim should be dismissed in its entirety.

## IV. LEGAL ARGUMENT AND AUTHORITIES

### A. Armstrong is Not Wynn's Agent

Bradley has attempted to create a legal fiction with this Court by referring to Armstrong as Wynn's agent without providing any factual or legal foundation for its claim. This honorable Court should disregard Bradley's position of the agency relationship when evaluating Wynn's Motion to Dismiss.

Under Virginia Law, the term agency means "a fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and

4

subject to his control, and the other person's manifestation of consent so to act." *Acordia of Va. Ins. Agency v. Gentio Glenn, L.P.*, 263 Va. 377, 384 (2002); *see also Reistroffer v. Person*, 247 Va. 45, 48 (1994). Moreover, no agency relationship can be presumed when there is "an unambiguous written document" that states there is no agency relationship. *See Acordia*, 560 Va. 384; *Reistroffer*, 247 Va. at 48. While generally a question of agency is for the fact finder, a determination may be made by a court when there is an unambiguous written document. *Id.* In this case, Bradley has not only failed to allege sufficient facts to support a claim of agency but there is an unambiguous written document.

Based on the pleading requirements as set forth in *Iqbal and Twombly*, the Counterclaim fails to set forth sufficient facts pursuant to Rule 8. A Complaint must set forth "enough facts for the claim to be 'plausible on its face' and thereby 'raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Earl v. Norfolk State Univ.*, 2014 U.S. Dist. LEXIS 18583,*8 (E.D. Va. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "the plausibility requirement is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility' that a defendant is liable." *See id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Bradley's Counterclaim fails to allege enough facts for it to be "plausible on its face" that the car dealership, Armstrong, was Wynn's agent. Bradley merely makes the conclusory statement that Armstrong was Wynn's agent. *See e.g.* Countercl. ¶ 34. Under the circumstances of this case, it is simply not reasonable that a car dealership or its employee are agents of Wynn's and Bradley has alleged no facts to support this contention. Bradley thus fails to meet the pleading requirements of Rule 8.

Moreover, even if this Court were to consider Bradley's conclusory allegation with respect to agency, this allegation is clearly and unambiguously refuted by the Dealer Agreement between Wynn's and Armstrong. The Dealer Agreement States, "***No Agency***. Dealer is not an employee or agent of Administrator for any purpose whatsoever, but is an independent contractor. Dealer does not have nor shall it hold itself out as having any right, power or authority to create contract or obligation, either express or implied, on behalf of, in the name of or binding upon Administrator unless Administrator shall consent thereto in writing." (Attach 1, ¶ (1)(A)((6)).

The Dealer Agreement not only explicitly states that Armstrong is not Wynn's agent, but specifically states that Wynn's has not granted Armstrong authority to enter into or bind Wynn's to any contractual liabilities. Armstrong is merely authorized to sell the Wynn's products and fill out *applications* that are to be submitted to Wynn's. Wynn's will then review the applications and determine whether or not to accept the application and be bound to it – Wynn's and only Wynn's can accept and bind Wynn's to a VSC. (Attach. 1). Bradley admits this in her Counterclaim at paragraph 10.

In order for an agency relationship to exist, Wynn's would have needed to consent to such a relationship. Not only does the Counterclaim fail to allege any such consent but the Dealer Agreement squarely refutes any contention that Wynn's ever consented to Armstrong acting on Wynn's behalf as its agent. For these reasons, Wynn's respectfully requests this Court disregard the characterization of Armstrong as Wynn's agent when deciding this Motion to Dismiss.

6

Case 5:13-cv-00114-MFU-JGW Document 19 Filed 02/18/14 Page 6 of 15 Pageid#: 86

### B. Count I – Fraud/Constructive Fraud

Count I of the Counterclaim alleges a cause of action for Fraud/Constructive Fraud. To state a cause of action for fraud a plaintiff "must allege: (1) a false representation; (2) of a material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance; and (6) damage as a result." *Coles v. Oakwood Mortg., LLC.*, 2012 U.S. Dist. LEXIS 157915, *14 (E.D. Va. 2012). The Virginia Supreme Court has further stated that "fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements of future events. *Patrick v. Summers,* 235 Va. 452, 454 (1988). Moreover, any reliance by the plaintiff must be reasonable. *Ostolaza-Diaz v. Countrywide Bank, N.A.,* 360 Fed. Appx. 504, 506 (4th Cir. 2010). In this case, Bradley fails to meet these requirements. Wynn's made no misrepresentation, there is no reasonable reliance by Bradley and no resulting damage to Bradley from any representations by Wynn's.

#### 1. *Bradley fails to allege a material misrepresentation by Wynn's*

The transaction at issue between Wynn's and Bradley is merely the issuance of the Application. Wynn's did not sell the Vehicle to Bradley. Wynn's is also not a party to the Retail Installment Sales Contract, which Bradley admits. (Countercl. ¶26). As Armstrong is not Wynn's agent, Wynn's cannot be held accountable for what Armstrong told Bradley during the sale of the Vehicle. Whether or not this Court ultimately concludes that Armstrong, an independent motor vehicle dealership, is Wynn's agent for the purpose of selling a service contract, the allegations cannot be contorted to make Wynn's the seller of the Vehicle. Thus, any representations made by Armstrong with respect to what is and is not included in the Vehicle purchase price cannot be attributed to Wynn's. Armstrong's representations to Bradley

7

regarding the sale of the Vehicle are immaterial to the sale and terms and conditions of the Application, which Bradley signed.

The only representations at issue are those made by Wynn's directly to Bradley. Armstrong is not Wynn's agent, therefore any representations made by Armstrong is a matter outside the scope of this dispute and is being addressed in the pending arbitration between Bradley and Armstrong. At no point does Bradley allege that Wynn's misrepresented any information to Bradley. Bradley admits that the Application is merely an application and subject to Wynn's final review. (Countercl. ¶10). Bradley admits that the Vehicle was not eligible for coverage under the Application or a VSC. (Countercl. ¶ 11). Furthermore, Bradley admits that Wynn's sent the August 28, 2012 letter, which Bradley received on or about September 8, 2012, advising Bradley that the Application was void due to an ineligible vehicle and that the purchase price was refunded. (Countercl. ¶¶12-13). Thus, there are no material misrepresentations by Wynn's to support a Fraud/Constructive Fraud claim.

Moreover, any representation regarding the Application relates to future events. Notably, the front page of the Application specifically states that it is an application for a vehicle service contract and must be accepted by Wynn's to go into effect. (Compl. Ex. 2.) Bradley specifically acknowledged that the purchase of a VSC was not a prerequisite to purchase of the Vehicle and that the Application could be rejected if the administrator, Wynn's, determined that the Vehicle was ineligible. (Compl. Ex. 2). Any representations regarding future coverage would be, by their very nature, statements regarding future events occurring only if and when the application is accepted. As such, statements regarding coverage cannot form the basis of a claim for fraud.

8

### 2. *Bradley did not reasonably rely on the alleged representations*

To prevail on a cause of action for fraud, a plaintiff must not only plead reliance but that reliance must be reasonable. *Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 Fed. App'x. 504, 507 (4th Cir. 2010). In Virginia, a plaintiff may not rest on oral allegations to support a claim for fraud when she was in possession of a contrary statement in writing. *Id.* The very document in Bradley's possession indicates on its face that it was merely an application and that the Application could be rejected in the sole discretion of the administrator – Bradley admits these facts. (Countercl. ¶¶ 9-10). Likewise, Bradley's contention that she relied on the representations that the Application covered battery repair are likewise without merit. The Application signature block specifically states that Bradley acknowledges she has read the terms and conditions of the Application, including but not limited to the exclusions section, which specifically excludes batteries from coverage. (Compl. Ex. 2, ¶ 22.) Bradley is bound by the terms of the signed Application and evidences Bradley's knowledge that batteries were specifically excluded from coverage should Wynn's accept the Application. Any reliance by Bradley on oral statements made by Armstrong or its employees is thus patently unreasonable.

Bradley's purported reliance on statements made by Armstrong following the purchase of the Vehicle is also unreasonable. Specifically, Bradley contends that Armstrong informed her that the August 28, 2012 letter from Wynn's was issued in error and should be disregarded. As argued above, Armstrong was not Wynn's agent, therefore Bradley could not reasonably rely on Armstrong's representations. Bradley was also in possession of the August 28, 2012 letter from Wynn's stating the Vehicle was ineligible for coverage, which precludes Bradley from relying on any oral representations by Armstrong. *See Ostolaza-Diaz*, 360 Fed. App'x. at 507. Thus,

9

Bradley's alleged reliance on supposed representations by Armstrong are not reasonable and are in direct contravention of well-established Virginia law.

### 3. *Bradley fails to plead resulting damage*

Finally, Bradley has failed to plead damages resulting from the alleged representations. Wynn's voided the Application and refunded the Application purchase price to the lienholder of record. This refund would be reflected in Bradley's total balance owed on the Retail Installment Sales Contract, to which Bradley admits Wynn's was not a party. Wynn's held no funds submitted on Bradley's behalf with the Application, thus owed no further obligations under the terms and conditions of the Application. Months later, Bradley sought to have Armstrong perform repairs on the Vehicle for items not covered under the terms of the VSC that Bradley contends was issued and active – contrary to all available facts. Moreover, Bradley's continued payments for the Vehicle pursuant to her contractual obligation under the Retail Installment Sales contract cannot be considered damages, as she was not paying for a VSC.

For the foregoing reasons, Bradley has failed to state a claim for fraud or constructive fraud against Wynn's and Wynn's respectfully requests that Count I be dismissed.

### C. **Count II -- Violations of the VCPA**

Bradley brings claims for three violations of the Virginia Consumer Protection Act. Based on the allegations in the Counterclaim, Bradley fails to set forth a claim pursuant to the VCPA. Generally, the VCPA applies to "fraudulent acts or practices committed by a supplier in connection with a consumer transaction[.]" Va. Code § 59.1-200. The terms of the statute define a consumer transaction as "the advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes[.]" Va. Code § 59.1-198. Pursuant to Virginia Code § 59.1-204, any person who

10

"suffers a loss as a result of a violation" of the VCPA may bring an individual action for damages. However, it is essential that the individual be engaged in the consumer transaction at issue. *See Microsoft Corp. v. #9 Software, Inc.,* 2005 U.S. Dist. LEXIS 36710, *8 (E.D. Va. 2005).

In this case, Bradley alleges Wynn's violated the following sections of the VCPA:

> (5) Misrepresenting that the goods or services have certain quantities, characteristics, ingredients, uses or benefits;
>
> (8) Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;
>
> (14) Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

Va. Code § 59.1-200.

Bradley's entire allegation for Count II is based upon Armstrong's role as Wynn's agent. As Wynn's addresses above, there was no agency relationship between Wynn's and Armstrong, therefore Wynn's cannot be held liable for any acts or misrepresentations committed by Armstrong. Thus, Count II is without merit and should be dismissed.

Furthermore, the allegations in the Counterclaim muddle Wynn's involvement in the overall transaction for the purchase of a vehicle from Armstrong. As noted above, Wynn's is neither the seller nor the supplier of the Vehicle at issue. Any misrepresentations made by Armstrong with respect to the sale of the Vehicle relate to a consumer transaction to which Wynn's was not a party. There are no allegations that Wynn's made any representations regarding the terms of the sale of the Vehicle or the qualifications of the Vehicle for coverage. Wynn's was not involved in the advertising or sale of the Vehicle.

The lone consumer transaction at issue between Wynn's and Bradley is for the purchase of a service contract. Bradley submitted an application for a service contract at the time of purchase. The Application specifically provided that the Application was subject to verification and that the administrator could reject the Application if it were determined that the Vehicle was not subject to coverage. Wynn's voided the Application and refunded the purchase price to the lienholder of record. Bradley admits that the Vehicle was never eligible for coverage under the Application or a VSC. (Countercl. ¶ 11).

With respect to the specific terms available under the proposed service contract, in clear unambiguous language, the Application specifically excludes batteries for coverage and Bradley should be considered as knowing this exclusion. The Application terms state that batteries were not covered pursuant to the terms of the contract which were attached to the Application. Finally, as outlined above, any representations made by Armstrong after the fact are not reasonable and cannot support a claim for any resulting damage. For the foregoing reasons, dismissal of Count II is appropriate.

### D. Count III – Magnuson-Moss Warranty Act

Count III of the Counterclaim fails to state a claim for relief pursuant to the Magnuson-Moss Warranty Act. Subsection (d) of the Act allows a civil action by a consumer who has been damaged by the "failure of a supplier, warrantor, or service contractor to comply with any obligation under this title [15 U.S.C. § 2301 et seq], or under a written warranty, implied warranty, or service contract..." Bradley neither points to a failure to comply with the Act nor an action on an existing service contract to support a claim for damages.

Bradley admits that she signed the Application. (Countercl. ¶9). Bradley admits that the Application was subject to Wynn's review and could be voided in accordance with the

12

Case 5:13-cv-00114-MFU-JGW   Document 19   Filed 02/18/14   Page 12 of 15   Pageid#: 92

Application terms and conditions. (Countercl. ¶10). Bradley admits that the Vehicle was never eligible for coverage under the Application or a VSC. (Countercl. ¶11). Bradley admits that Wynn's voided the Application. (Countercl. ¶26). Bradley admits that Wynn's notified Bradley the Application was voided via the August 28, 2012 letter, which Bradley received on or about September 8, 2012 (Countercl. ¶¶12-13). Bradley does not dispute that Wynn's refunded the purchase price of the Application when the Application was voided.

Based upon the foregoing admitted facts, Bradley has admitted that there was no contract in place between Wynn's and Bradley. Therefore, Wynn's could not be in violation of the Magnusson-Moss Warranty Act and Count III should be dismissed.

Nevertheless, even if Bradley can somehow argue that a service contract is in place, there are no facts in the Counterclaim that support Bradley's contention that Wynn's failed to comply with its obligations under this theoretical service contract. (Countercl.¶ 102.) The Counterclaim alleges in paragraph 70 that Bradley discovered the need for repairs to the "battery and/or battery pack due to severe battery pack deterioration." (Countercl. ¶ 70.) These types of repairs are specifically excluded under paragraph 22 of the terms of the Application, which Bradley signed and acknowledged to have read. (Attach 2). Thus, on the face of Bradley's Counterclaim, Wynn's cannot have failed to comply with a VSC as the alleged requested repairs were for non-covered and specifically excluded items. Without facts supporting a contention that Wynn's failed to comply with the terms of the service contract, there can be no violation of the Magnuson-Moss Warranty Act.

For the foregoing reasons, Wynn's respectfully requests that Count III be dismissed with prejudice.

13

## V. CONCLUSION

Based on the foregoing, counterclaim defendant Wynn's Extended Care, Inc. respectfully requests this Court to grant its Motion to Dismiss the Counterclaim with prejudice and such other relief as the Court may deem appropriate.

                        WYNN'S EXTENDED CARE, INC.
                        By Counsel

                        _____/s/_____

Virginia M. Sadler
Virginia State Bar No. 48736
Attorney for Wynn's Extended Care, Inc.
JORDAN COYNE & SAVITS, L.L.P.
10509 Judicial Drive, Suite 200
Fairfax, Virginia 22030
(Tel.) (703) 246-0900
(Fax) (703) 591-3673
E-Mail: v.sadler@jocs-law.com

14

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of February, 2014, I electronically filed the foregoing Memorandum of Points and Authorities in Support of Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

> Timothy E. Cupp, Esquire
> Virginia State Bar No. 23017
> CUPP & CUPP, P.C.
> 1951-D Evelyn Byrd Avenue
> P.O. Box 589
> Harrisonburg, Virginia 22803-0589
> (Tel.) (540) 432-9988
> (Fax) (540) 432-9557
> E-Mail: cupplaw@comcast.net
>
>
> Thomas D. Domonoske, Esquire
> Virginia State Bar No. 35434
> 461 Lee Avenue
> Harrisonburg, Virginia 22802
> (Tel.) (540) 442-7706
> E-Mail: tomdomonoske@earthlink.net
>
> *Counsel for Plaintiff*

> /s/
> Virginia M. Sadler
> Virginia State Bar No. 48736
> Attorney for Wynn's Extended Care, Inc.
> JORDAN COYNE & SAVITS, L.L.P.
> 10509 Judicial Drive, Suite 200
> Fairfax, Virginia 22030
> (Tel.) (703) 246-0900
> (Fax) (703) 591-3673
> E-Mail: v.sadler@jocs-law.com