IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| WYNN'S EXTENDED CARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 5:13-cv-00114 |
| | ) | |
| v. | ) | |
| | ) | |
| PENNY L. BRADLEY, | ) | By: Hon. Michael F. Urbanski |
| | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff Wynn's Extended Care, Inc.'s ("Wynn's Extended Care") motion to dismiss Defendant Penny L. Bradley's ("Bradley") counterclaim. (Dkt. No. 18). For the reasons set forth below, the court **DENIES** Wynn's Extended Care's motion.

**I.**

The court will accept all of the facts alleged in Bradley's counterclaim as true and "draw all reasonable inferences in [her] favor" for the purposes of evaluating whether she has sufficiently pleaded her counterclaims against Wynn's Extended Care. Kensington Volunteer Fire Dep't, Inc. v. Montgomery County, Md., 684 F.3d 462, 467 (4th Cir. 2012) (internal quotation marks omitted). The following facts are taken directly from Bradley's counterclaim. (Dkt. No. 10).

On August 21, 2012, Bradley went to Armstrong Auto Sales, Inc. ("Armstrong Auto") to buy a used car with good gas mileage. Bradley was considering the purchase of a hybrid vehicle and discussed a 2007 Honda Civic Hybrid with Travis Armstrong, an employee of Armstrong Auto. Travis Armstrong informed Bradley that she would "definitely need [a] warranty for a hybrid" because the cost of replacing the battery would be expensive. Travis Armstrong told Bradley that

she would get a 24 month/24,000 mile warranty with the car. Bradley stated that she only wanted a car with a warranty and agreed to buy the Honda Civic Hybrid because it had this warranty. Bradley alleges that she would not have made the purchase without the warranty promised by Travis Armstrong. Bradley paid $1,300 at the time of purchase and financed the remainder of the purchase price and the cost of the warranty through Credit Acceptance Corporation ("Credit Acceptance") under a Retail Installment Contract. Beyond her down payment, Bradley financed an additional $13,339.00, which included the cost of the warranty, $1,580.[1] Although Bradley initialled a provision on page two of the Retail Installment Contract detailing the $1,580 cost of the optional warranty, she alleges that she did not understand, and Travis Armstrong did not explain, that the $1,580 cost of the warranty was in addition to the purchase price of the car quoted.

One week later, on August 28, 2012, Bradley received a letter from Wynn's Extended Care notifying her that "the vehicle listed in the Vehicle Service Agreement . . . is ineligible under our Company's Underwriting Guidelines and was issued in error. Regrettably, your contract has been voided due to the following: This vehicle model is ineligible for coverage. Please contact your selling dealership with any questions." Compl. Ex. 3 (Dkt. No. 1-3). Bradley contacted Travis Armstrong who informed her that the letter had been issued in error and that Bradley did in fact have coverage under the warranty. After cancelling the contract, Wynn's Extended Care remitted the cost of the warranty to Credit Acceptance but not the tax on the warranty, which totaled $39.50. Bradley was not informed of this remittance.

Believing she had coverage under the Wynn's Extended Care warranty, Bradley continued to make payments on the car, which totaled $2,009.65 as of her last payment on January 20, 2013. Shortly after this final payment, Bradley discovered that the car needed thousands of dollars in repairs, including the hybrid battery, and took the car to Armstrong Auto for servicing under the 24

---

[1] The Retail Installment contract was attached as Exhibit 1 to the Complaint. That contract references the price of the "Optional Extended Warranty or Service Contract" as being $1,580.00.

month/24,000 mile warranty. Armstrong Auto refused to make the repairs due to the fact that Bradley's car was never eligible under the warranty and was never covered. At that time, Bradley stopped making payments on the car and delivered possession of the vehicle back to Armstrong Auto. On February 27, 2013, Bradley notified Armstrong Auto and Credit Acceptance that she was cancelling the transaction and requested a refund for all payments made pursuant to the Retail Installment Contract. Neither Armstrong Auto nor Credit Acceptance have made or agreed to make refund payments. Credit Acceptance is demanding that Bradley now pay the full amount due under the Retail Installment Contract. Bradley maintains that she never would have purchased the car or kept the car if there was no warranty included and that she purchased this particular car in reliance on Travis Armstrong's promises that the car and specifically its battery were under warranty.

On April 5, 2013, Bradley filed a complaint against Credit Acceptance, Armstrong Auto, and Travis Armstrong in the Circuit Court for Rockingham County. Wynn's Extended Care was not named as a party. The action was removed to the United States District Court for the Western District of Virginia on May 2, 2103, and on August 7, 2013, the court granted a motion to compel arbitration. In September 2013, Bradley instituted a JAMS Arbitration proceeding against Wynn's Extended Care, Credit Acceptance, Armstrong Auto, and Travis Armstrong. Wynn's Extended Care filed the complaint in this action on December 12, 2013, seeking to enjoin Bradley from proceeding with JAMS arbitration against Wynn's Extended Care. (Dkt. No. 1). On January 22, 2014, Bradley filed her answer and counterclaimed for fraud, violation of the Virginia Consumer Protection Act, and violation of the Magnuson-Moss Warranty Trade Improvement Act.[2] (Dkt. No. 10).

---

[2] The court has ancillary jurisdiction to hear the counterclaim because it "arises from the same transaction" as the claim based on federal law. Painter v. Harvey, 863 F.2d 329, 333 (4th Cir. 1988) (citing Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974)). The court has diversity jurisdiction over Wynn's Extended Care's complaint, and Bradley's counterclaim relates to the same events that are the subject of the arbitration. (Dkt. Nos. 1, 10). Additionally, a claim under the Magnuson-Moss Warranty Trade Improvement Act can be brought "in an appropriate district court of the

3

Wynn's Extended Care filed a motion to dismiss for failure to state a claim on February 18, 2014. (Dkt. No. 18). The court held oral argument on the motion to dismiss on April 4, 2014. During that hearing, the court concluded that Bradley had sufficiently pleaded the existence of an agency relationship, and therefore sufficiently pleaded a claim for a breach of a service contract under the Magnuson-Moss Warranty Trade Improvement Act.[3] The only remaining issue is whether reasonable reliance has also been sufficiently pleaded to state an actionable counterclaim for fraud and a violation of the Virginia Consumer Protection Act.

## II.

*A. Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) allows a defense to a claim for relief based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Furthermore, the Supreme Court has held that:

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

---

United States" as long as "the amount in controversy of any individual claim is [more] than the sum or value of $25," and "if the amount in controversy is [more] than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(1)(A), (d)(3) (2014). Wynn's Extended Care alleges in its Complaint that Bradley seeks damages in arbitration in excess of $75,000. Compl. ¶ 1 (Dkt. No. 1).

[3] The Magnuson-Moss Warranty Trade Improvement Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . ." 15 U.S.C. § 2310(d)(1) (2014). The Act defines service contract as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product." Id. § 2301(8). Consumer is defined as "buyer (other than for purposes of resale) of any consumer product, . . . and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." Id. § 2301(3). Warrantor is defined as "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." Id. § 2301(5). Bradley's counterclaim alleges that Wynn's Extended Care, by its agent Armstrong Auto, entered into a written service contract with Bradley and that Wynn's subsequently "failed to comply with its obligations under the service contract" in violation of the Magnuson-Moss Warranty Trade Improvement Act. Def.'s Countercl. at ¶¶ 97–103 (Dkt. No. 10). Contrary to Wynn's Extended Care's argument that "Bradley admits that Wynn's voided the Application," Pl.'s Memo Supp. Mot. to Dismiss at 13, Bradley states in her answer that she "[a]dmitted . . . that within five days of the sale Wynn's *decided not to honor the contract* its agent made." Def.'s Answer & Countercl. at ¶ 26 (Dkt. No. 10) (emphasis added).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007) (internal citations omitted)). In evaluating the complaint, the court may consider any "documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" Kensington Vol. Fire Dep't, Inc. v. Montgomery County, Md., 684 F.3d 462, 467 (4th Cir. 2012) (quoting Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

### B.   *Bradley's Counterclaims*

In the first cause of action alleged in her counterclaim, Bradley alleges "fraud/constructive fraud" claiming that Wynn's Extended Care's agent, Armstrong Auto, misrepresented that the extended service contract was included in the transaction and that this misrepresentation induced Bradley to sign the Retail Installment Contract. (Dkt. No. 10, at 8–9). Both fraud and constructive fraud require a showing of reliance. Winn v. Aleda Construction Co., 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984). Nationwide Ins. Co. v. Patterson, 229 Va. 627, 629, 331 S.E.2d 490, 492 (1985). In Patterson, the court noted that the "proper test for reliance" is "whether [the plaintiff], in fact, relied on [the defendant's] misrepresentation." Id. at 630, 331 S.E.2d at 492. Whether the claim is for fraud or constructive fraud, the representations must be made "in such way as to induce a reasonable man to believe it." Mears v. Accomac Banking Co., 160 Va. 311, 321, 168 S.E. 740, 743 (1933). Thus Virginia law has long required any alleged reliance to be reasonable.

Bradley also alleges a violation of the Virginia Consumer Protection Act ("VCPA") in her counterclaim based on her position that Wynn's Extended Care, through its agent, "violated Va. Code Ann. § 59.1-200(A)(5), (8) and (14) by charging for coverage that was not provided, by misrepresenting that coverage was provided, by misrepresenting that the August 28 letter was in error, and by not refunding the tax on the coverage not provided." (Dkt. No. 10, at 9.) Reasonable

5

reliance is likewise "required to establish a VCPA claim." Fravel v. Ford Motor Co., No. 5:13cv014, 2013 WL 5347462, at *5 (W.D. Va. Sept. 23, 2013) (quoting Adardour v. Am. Settlements Inc., No. 1:08CV798, 2009 WL 1971458, at *3 (E.D. Va. July 2, 2009)).

Having determined that both Bradley's fraud and VCPA claims require reasonable reliance, the court will now turn to the parties' arguments and authorities on this issue.

*C. Reasonable Reliance*

Wynn's Extended Care argues that Bradley cannot reasonably rely "on oral allegations to support a claim or fraud when she was in possession of a contrary statement in writing." (Dkt. No. 19, at 9). Because the "Sample" attached to Wynn's Plus Used Vehicle Service Contract/Application signed by Bradley and Travis Armstrong on the date of the sale of the vehicle, August 21, 2012, contains an exclusion for "[o]ther normal maintenance services and parts, including, without limitation . . . batteries," Compl. Ex. 2, ¶ 22 (Dkt. No. 1-2), Wynn's Extended Care argues that Bradley's alleged reliance on the oral representations made by Travis Armstrong cannot be reasonable as a matter of law. For this argument, Wynn's Extended Care relies on an unpublished Fourth Circuit case, Ostolaza-Diaz v. Countrywide Bank, N.A., 360 Fed. App'x 504 (4th Cir. 2010), to support its position. In Ostolaza-Diaz, the court evaluated loan documents and a Truth in Lending Act disclosure statement against oral representations made by a loan officer and found that the written documents "unambiguously spelled out" the terms. Id. at 506–07.

Bradley, on the other hand, argues that "Virginia . . . recognizes that fraud occurs when a person reasonably relies on misrepresentations about the meaning and significance of documents when signing those documents, even without reading them carefully." (Dkt. No. 22, at 9). Bradley alleges that Wynn's Extended Care's agent, Armstrong Auto, made false representations to her about what was in the service agreement and that it was reasonable for her to rely on these representations. Bradley relies on Spence v. Griffin, 236 Va. 21, 372 S.E.2d 595 (1988), a Virginia

6

Supreme Court case that allowed a fraud claimed based on representations made about the nature of the documents being signed. Bradley also cites in her memorandum in opposition to the motion to dismiss that "a principal is bound by the representations of his agent, made either in the scope of his employment or in furtherance of the object for which he is employed." Id. at 29, 372 S.E.2d at 599 (quoting Patterson, 229 Va. at 632, 331 S.E.2d at 493).

Given that Bradley has sufficiently alleged the existence of an agency relationship between Armstrong Auto and Wynn's Extended Care, her counterclaim contains plausible facts from which a factfinder may infer that she reasonably relied on Travis Armstrong's oral representations about the service contract and this contract's relationship to the Retail Installment Contract. Bradley alleges that Travis Armstrong, promised her that the hybrid she purchased included a warranty that covered the battery. Def.'s Countercl. at ¶¶ 32–40 (Dkt. No. 10). Travis Armstrong represented to Bradley that the 24 month/24,000 mile warranty was included with the car and did not explain to her that the cost of coverage was in addition to the price of the car. Id. at ¶ 45. Bradley continued to believe that her car was covered under the warranty based on the letter from Wynn's Extended Care directing her to her "selling dealership" and on Travis Armstrong's subsequent promises that the Wynn's Extended Care letter was issued in mistake. Id. at ¶¶ 63–65. The court finds this last point critical to the analysis and materially distinguishes Ostolaza-Diaz. In short, because the August 28, 2012 letter from Wynn's Extended Care directs Bradley to contact Armstrong Auto and Bradley alleges that Travis Armstrong told her that the letter was erroneous and that she in fact had coverage, the terms of the "Sample" attached to the Wynn's Plus Used Vehicle Service Contract/Application cannot carry the day for Wynn's Extended Care as a matter of law at the pleading stage. Furthermore, Bradley was never informed that the price of the warranty was refunded to Credit Acceptance, so she had no reason to believe the warranty had in fact been cancelled. Def.'s Countercl. at ¶ 66 (Dkt. No. 10). In short, the question of whether or not

7

Bradley's reliance on Wynn's Extended Care's agent's oral representations contrary to the written terms of the warranty application/contract was reasonable requires further development of the facts.

### III.   Conclusion

This is a highly fact-intensive inquiry.  At this stage, Bradley has sufficiently pleaded the underlying facts with enough particularity to survive a motion to dismiss under the Twombly and Iqbal standards.  The court believes that further factual development is required and that these issues ought properly be addressed at the Rule 56 stage.  For these reasons, Wynn's Extended Care's motion to dismiss, Dkt. No. 18, is **DENIED**. An appropriate Order will be entered.

The Clerk is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered:  May 23, 2014

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge