UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

WYNN'S EXTENDED CARE, INC.,
    Plaintiff and Counter-defendant

v.                                      Case Number: 5:13-cv-00114

PENNY L. BRADLEY,
    Defendant and Counter-plaintiff.

## MOTION TO COMPEL DISCOVERY RESPONSES

For the reasons set forth in the brief below, Penny L. Bradley (Bradley) brings this Motion under Rule 37(a) of the Federal Rules of Civil Procedure to compel Wynn's Extended Care, Inc. (Wynn's), to produce net worth information, information regarding the frequency and persistence of similar sales of service contracts on ineligible vehicles, the Dealer Kit it provided Armstrong Auto, the rate sheets for dealer cost, wholesale cost, and retail cost of its service contracts, and its contracts with Credit Acceptance Corporation.

## BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES

### FACTUAL BACKGROUND

This case is brought for violations of the Virginia Consumer Protection Act (VCPA) and the Magnuson Moss Warranty Trade Improvement Act and for fraud. The fraud claim includes a request for punitive damages. Defendant filed a Motion to Dismiss, and while that Motion was pending discovery was stayed. On May 27, 2014, this Court filed its opinion denying the Motion to Dismiss and allowing all claims to go forward.

On May 28, 2014, Bradley served Wynn's with discovery that included Interrogatories and Requests for Production of Documents. On June 30, 2014, Wynn's served objections to each and every discovery request. In communications between counsel, Wynn's then stated it would be providing some substantive responses. On August 10, 2014, Wynn's then served the Interrogatory Answers attached as Exhibit A and the Responses for Request for Documents attached as Exhibit B.

In Exhibit A, Wynn's objected to providing net worth information as requested by Interrogatory 1. Wynn's claims the information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

In Exhibit A, Wynn's also objected to Interrogatory Nos. 4 through 8. Each of these Interrogatories sought information regarding the frequency and persistence of the problem of a Wynn's service contract being sold on an ineligible vehicle during the last five calendar years. Wynn's claims this line of inquiry is overly broad and burdensome, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence.

In Exhibit B, Wynn's objected to Document Request 1 that asked for a copy of all contracts and rate charts between Wynn's and Armstrong Auto that showed dealer cost, retail cost and wholesale cost. Wynn's claims the information is overly broad, not relevant to these proceedings, and not reasonably calculated to lead to the discovery of admissible evidence. Wynn's did provide a document that is the last page of Exhibit B that had the retail prices redacted.

In Exhibit B, Wynn's objected to Document Request 2 that asked for a copy of all manuals, instructions, or guidelines to be used by any person selling a Wynn's service

contract. Wynn's claims the information is overly broad and not relevant to these proceedings.

In Exhibit B, Wynn's objected to Document Request 3 that asked for the contracts between Credit Acceptance Corporation and the various companies that are affiliated with Wynn's. Wynn's claims the information is overly broad, not relevant to these proceedings, and not reasonably calculated to lead to the discovery of admissible evidence.

In Exhibit B, Wynn's objected to Document Request 4 that asked for each application submitted to Wynn's in the past five calendar years where the car was determined ineligible for the service contract and Credit Acceptance Corporation was involved in the transaction. Wynn's claims the information is overly broad, not relevant to these proceedings, not reasonably calculated to lead to the discovery of admissible evidence, and seeks production of confidential information of other consumers.

On August 11, 2014, counsel for both parties met and conferred by phone about the objections, the general scope of discovery, and what matters would be included in a corporate deposition notice. The parties were unable to resolve the objections and recognized that many of these issues have bearing on the scope of the corporate deposition to be taken of Wynn's. Thus, a Court ruling on the scope of allowed discovery will not only resolve the current issues but also provide guidance regarding the scope of the corporate deposition.

## APPLICATION OF LAW TO FACT

Bradley is entitled to bring this Motion to compel the requested discovery. Pursuant to Rule 26 of the Federal Rules of Civil Procedure, parties are expected to

conduct discovery between themselves to narrow the issues. Fed. R. Civ. P. 37 (a)(1), (2), and (3) permit a party, upon reasonable notice to other parties, to apply for an order compelling discovery if another party fails to answer an interrogatory submitted under Fed. R. Civ. P. 33, or to provide documents in response to a request submitted under Fed. R. Civ. P. 34. After taking reasonable measures to resolve the discovery dispute, Plaintiff is entitled to the granting of a motion to compel. Fed. R. Civ. P. 37(a)(4).

As more fully set forth in the paragraphs below, the requested discovery in Interrogatory 1, Interrogatories 4 through 8, and Document Requests 1 through 4 should be granted because the requests are relevant and Defendant has not met its burden to show any reason the information should not be provided. Rule 26(b)(1) provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Under this rule, "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *CareFirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (citation omitted); *see also Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977). Consequently, for purposes of discovery the issue of relevancy is to be given broad construction. *See, e.g., Kidwilder v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D. W. Va. 2000); *Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010); *Floren v. Whittington*, 217 F.R.D. 389, 391 (S.D. W.Va. 2003); *Spell v. McDaniel*, 591 F. Supp. 1090, 1114 (E.D. N.C. 1984).

Defendant has wholly failed to carry its burden to object to the requested discovery. "The burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal

construction of federal discovery rules." *Desrosiers v. MAG Industrial Automation Systems,* LLC, 675 F. Supp. 2d 598, 601 (D. Md. 2009); *see also Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 204 (S.D. W.Va. 2011). As to overbreadth and burdensomeness, then Magistrate Judge Hannah Lauck wrote in 2008 that "[m]erely characterizing a discovery request as 'overly broad, burdensome, oppressive and irrelevant' will not satisfy the opposing party's burden of showing with specificity why a request is objectionable." *Cappetta v. GC Services Limited Partnership*, 2008 U.S. Dist. LEXIS 103902 at *10 (E.D.Va. 2008) (*citing Momah v. Albert Einstein Med. Ctr*., 164 F.R.D. 412, 417 (E.D. Pa. 1996); *Josephs v. Harris Corp*., 677 F.2d 985, 991-91 (3d Cir. 1982); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). Defendant's objections are in no way specific and fail to satisfy its burden.

Interrogatory 1 asked for net worth information. Wynn's assertion that the information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence should be rejected because this is a punitive damages case. Under Virginia law, the ability of defendant to pay a punitive damages award is relevant to the amount of the punitive damages. *Poulston v. Rock,* 251 Va. 254, 263, 467 S.E.2d 479, 484 (1996). In *Saunders v. Branch Banking and Trust*, 526 F.3d 142, 154-55 (4th Cir. 2008), the United States Court of Appeals for the Fourth Circuit noted that it is well-settled that a defendant's net worth is a factor that is "typically considered in assessing punitive damages." In that case, the Fourth Circuit further noted that the $3.2 billion net worth of BB&T supported a punitive damage award 80 times the compensatory award. *See also*, *Deters v. Equifax Credit Info. Services, Inc.*, 202 F.3d 1262, 1273 (10th Cir. 2000) ("the wealth and size of the defendant are relevant considerations" in determining

the amount awarded in punitive damages); *Continental Trend Res., Inc. v. OXY USA, Inc.*, 101 F.3d 634, 641 (10th Cir. 1996) ("[W]ealth must remain relevant [in determining the proper amount of punitive damages], because $50,000 may be awesome punishment for an impecunious individual defendant but wholly insufficient to influence the behavior of a prosperous corporation."); and *E.E.O.C. v. Environmental & Demolition Servs., Inc.*, 246 F.R.D. 247, 249-50 (D. Md. 2007) ("[A] majority of courts hold that pretrial discovery of financial statements relevant to a punitive damages claim is generally permissible without any prima facie showing of entitlement to such damages"). Therefore, this information is relevant.

Interrogatory 4 through 8 sought information regarding the frequency and persistence of the problem of a Wynn's service contract being sold on an ineligible vehicle during the last five calendar years. Wynn's assertion that this line of inquiry is overly broad and burdensome and not relevant and not reasonably calculated to lead to the discovery of admissible evidence should be rejected because this is a punitive damages case. Under federal law, the factors included for the proper amount of punitive damages include whether "the conduct involved repeated actions or was an isolated incident" and whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003). Under the VCPA claim, the element for consideration of the trebling component of Va. Code 59.1-204(A) is willfulness. For both punitive damages and the VCPA claim, the frequency and persistence of this specific problem is relevant evidence to Wynn's conduct in allowing it to occur

Document Request 1 asked for a copy of all contracts and rate charts between Wynn's and Armstrong Auto that showed dealer cost, retail cost and wholesale cost. Wynn's assertion that the information is overly broad, not relevant to these proceedings, and not reasonably calculated to lead to the discovery of admissible evidence should be rejected. Although Wynn's did provide a document that is the last page of Exhibit B, it had the retail prices redacted. The cost to the dealer or what was actually paid by Credit Acceptance Corporation is relevant to show the actual value that was at issue in the transaction.

Document Request 2 asked for a copy of all manuals, instructions, or guidelines to be used by any person selling a Wynn's service contract. Wynn's assertion that the information is overly broad and not relevant to these proceedings should be rejected. As stated in its Answer to Interrogatory 2 in Exhibit A, it provided a Dealer Kit to Armstrong Auto. This Dealer Kit should be provided so that Bradley can determine what Armstrong Auto was told about selling Wynn's product.

Document Request 3 asked for the contracts between Credit Acceptance Corporation and the various companies that are affiliated with Wynn's. Wynn's assertion that the information is overly broad, not relevant to these proceedings, and not reasonably calculated to lead to the discovery of admissible evidence should be rejected. As set forth in Interrogatory Answers 2, 3, 9, 12 of Exhibit A, Wynn's allows Credit Acceptance Corporation to train car dealers how to sell Wynn's products. Furthermore, Interrogatory 9 identifies that Wynn's lets Credit Acceptance Corporation set the price of its product and Credit Acceptance Corporation's software processes the sale contracts. To fully set

forth the agency relationship between the dealer and Wynn's therefore requires representing the web of contract relationships with Credit Acceptance Corporation.

Document Request 4 asked for each application submitted to Wynn's in the past five calendar years where the car was determined ineligible for the service contract and Credit Acceptance Corporation was involved in the transaction. Wynn's assertion that the information is overly broad, not relevant to these proceedings, and not reasonably calculated to lead to the discovery of admissible evidence should be rejected. In this case, a national company allows people to sell its product without giving those people any training or conducting any oversight of their activities. For Ms. Bradley's transaction , she was lured into buying a car because of the false representation that it would have protection from Wynn's. Wynn's agent made this misrepresentation and the extent of this specific problem is relevant to a determination of Wynn's willfulness, an element for consideration of the trebling component of Va. Code 59.1-204(A) of the VCPA claim and also for the claim for punitive damages. The frequency and persistence of this specific problem is relevant evidence to Wynn's conduct in allowing CAC to train and supervise Wynn's agents. To the extent that these applications would disclose confidential information of other consumers, Wynn's could simply redact the personal identifiers, or an appropriate protective order could be entered. *See, e.g., Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489-92 (4th Cir. 1992).

## Conclusion

Bradley requests that the Court compel Wynn's provide complete responses to her discovery in a timely manner so that she may use that information to prepare for a corporate deposition of Wynn's.

Respectfully submitted,

s/Thomas D. Domonoske
Thomas D. Domonoske VSB #35434
Of Counsel Legal Aid Justice Center
461 Lee Avenue
Harrisonburg, VA 22802
540-442-7706

Timothy E. Cupp  VSB No. 23017
Shelley Cupp Schulte, P.C.
1951-D Evelyn Byrd Avenue
P.O. Box 589
Harrisonburg VA  22803-0589
Phone: (540) 432-9988
Facsimile:  (804) 278-9634
e-mail: cupp@scs-work.com

### CERTIFICATE OF GOOD FAITH EFFORT TO RESOLVE DISPUTE

I, Thomas D. Domonoske, certify that counsel made a good faith attempt to resolve this discovery dispute by first allowing an extended time for Wynn's to provide answers after it served only objections and then by telephone conversation regarding the main areas of dispute.

/s
Thomas D. Domonoske

### CERTIFICATE OF SERVICE

I, Thomas D. Domonoske, certify that a true copy of this Motion to Compel was delivered by electronic filing via ECF to all counsel of record on this 13th day of August, 2014.

/s
Thomas D. Domonoske