UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

WYNN'S EXTENDED CARE, INC.,
    Plaintiff and Counter-defendant

v.                                                       Case Number: 5:13-cv-00114

PENNY L. BRADLEY,
    Defendant and Counter-plaintiff.

MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS FOR
VIOLATING PROFIT SHARING ORDER AND FOR FAILURE TO PRODUCE
KNOWLEDGEABLE DESIGNEE AT CORPORATE DEPOSITION

      Penny L. Bradley (Bradley) seeks sanctions against Wynn's Extended Care, Inc., (Wynn's) for two different types of misconduct. The first (Section I below) involves Wynn's violation of this Court's discovery Order regarding its profit sharing agreement with CAC. The second (Section II below) regards Wynn's failure to provide a knowledgeable witness on the topics designated in Bradley's corporate deposition notice. (Exhibit A). Under each of these sections, Bradley seeks an appropriate sanction to the nature of the misconduct.

I.

WYNN'S SHOULD BE SANCTIONED FOR VIOLATING THIS COURT'S
PROFIT SHARING ORDER.

**A. Wynn's violation of this Court's profit sharing order caused prejudice to Bradley.**

      **1.    Wynn's violated the Court's profit sharing order and instead provided a false declaration from a person who does not even know if such a program exists.**

      This case is brought for violations of the Virginia Consumer Protection Act (VCPA) and the Magnuson Moss Warranty Trade Improvement Act and for fraud.

1

Bradley claims that Armstrong Auto Sales, Inc., (Armstrong Auto) was an agent of Wynn's and that Wynn's is liable for statutory damages, actual damages, and punitive damages because of the misrepresentations of its agent.

From the very beginning of this case, Wynn's has asserted a defense around the following idea: it had no motivation to allow dealers to sell service contracts on ineligible vehicles because it could make no money through such an arrangement and because it refunds the purchase price. (See Document 19, Wynn's Memorandum in Support of Motion to Dismiss, pg. 10, and pg. 12, both asserting Wynn's "refunded the purchase price to the lienholder of record). Because Credit Acceptance Corporation (CAC) was the lienholder, the flow of money between Wynn's and CAC has been in issue from before Wynn's filed an answer.

To discover facts about the flow of money between Wynn's and CAC, and the nature of any contract between them, on May 28, 2014, Bradley served Wynn's with Requests for Production of Documents (Doc. 32-2). Request 3 was for all contracts between Wynn's and CAC, and also contracts with Phoenix American companies. On June 30, 2014, Wynn's served objections to each and every discovery request. In communications between counsel, Wynn's then stated it would be providing some substantive responses. On August 10, 2014, Wynn's then served Responses to the Request for Documents but, among other lapses, did not provide its contracts with CAC, nor any involving Phoenix American companies.

To obtain the pertinent contracts, on August 13, 2014, Bradley filed her Motion to Compel Discovery Responses (Doc 32.). On August 22, 2014, Wynn's filed its Opposition (Doc. 38) and on page 4, Wynn's stated in part:

2

> Nor can Bradley explain how it could possibly be profitable for Wynn's to deliberately induce car dealers to submit ineligible applications for extended service contracts, which would inevitably result in a full refund of any amount paid to Wynn's, thereby providing Wynn's with no revenue or profit.

On August 25, 2014, Bradley filed her Reply to that Opposition (Doc. 41). A hearing was held before Magistrate Judge James G. Welsh on Thursday, August 28, 2014, at 10:30 a.m. At that hearing, Wynn's repeatedly asserted that Phoenix American had nothing to do with the Bradley transaction and the Court agreed to limit the required document production to contracts between CAC and Wynn's.

Instead of complying with the Order to provide the complete CAC-Wynn's contract, Wynn's unilaterally decided to redact significant portions of that contract. After it produced the redacted contracted, it then asked the Court to reconsider this aspect of the prior Order in its Motion for Reconsideration (Doc. 49). At the hearing on September 11, 2014, this Court reviewed the redacted portion of the Second Amendment of Wynn's-CAC contract that showed subheading "5 (A) Profit Sharing Plan." (Attached as Exhibit B, which was part of Exhibit 21 at Wynn's corporate deposition). The Court then ordered Wynn's to provide an affidavit or declaration setting forth the underlying calculus or formula for its profit sharing plan with CAC. (Doc. 52). In the response, on Friday, September 12, 2014, Wynn's provided the declaration referenced as Exhibit C, which was also labeled Exhibit 22 at Wynn's corporate deposition.

This declaration does not provide any formula or calculus of the Wynn's-CAC Profit Sharing Plan. This declaration never uses the term "Profit Sharing Plan." This declaration provides no description of any profit sharing. More important, the declarant who Wynn's selected to describe the formula for the Wynn's-CAC Profit Sharing Plan on

3

September 12, 2014, stated under oath on Monday, September 15, 2014, that his first access to the CAC-Wynn's contract was on Sunday, September 14, 2014. (Exhibit D: 142:14-18), which was after he signed Exhibit C. Even then, he was shown only the redacted contract with no text under subparagraph 5 (A) about the CAC-Wynn's profit sharing plan. (Exhibit D: 143:3-10).

More fundamentally, he has admitted that he does not even know what is in that "Profit Sharing Plan" agreement. (Exhibit D: 144:12-25). He admitted that "I'm not familiar with the profit sharing." (Exhibit D: 145:17-25). He admitted that he does not know whether his sworn statement accurately summarizes the CAC-Wynn's Profit Sharing Plan. (Exhibit D: 146:13- 157:17). He was simply emailed the document and instructed to sign it by Wynn's corporate counsel, Matthew Brooks, late that Friday evening. (Exhibit D: 148:1-3, and 151:20-152:25). Finally, in response to a question from Wynn's counsel about whether any formula or calculation for profit sharing existed, he responded: "If there is I don't know about it." (Exhibit D: 167:1-6).

In addition to what the declarant did not know, Wynn's knew that it was providing a false declaration. The specific order was to provide the calculus or formula or method of calculating profit sharing set forth in paragraph 5 (A) of the Wynn's-CAC agreement. The declarant affirmed under penalty of perjury that Exhibit C was "based on the business records of Wynn's Extended Care, Inc." Given the Court's Order, one and only record needed to be analyzed and described, and Wynn's never provided this business record to the declarant. Comparing the averment clause statement about reliance on business records and the actual truth highlights the falsity. The truth would

4

have been "I have not been provided the text of the profit sharing plan and do not know what it states."

Consequently, Wynn's violated the Court's profit sharing order. Instead of giving a calculus, formula or method, it provided no equation or plan. What it actually provided was a false declaration by a witness who does not even know if such a program exists.

> **2.  Bradley has been and continues to be prejudiced by Wynn's failure to provide the formula of the Wynn's-CAC profit sharing.**

As explained by Wynn's on page 4 in its Opposition to Motion to Compel (Doc. 38), one of Wynn's main defenses is that Bradley cannot show how Wynn's profited by its agent's fraud. This defense goes to the intent element of the fraud claim, the willfulness of the VCPA claim, and the punitive damage claim. Wynn's false declaration about the Wynn's-CAC deposition has kept Bradley from understanding and presenting how the money flows between Wynn's and CAC. Wynn's decision to submit that false declaration has ensured that all the facts about the relationship between Wynn's and CAC cannot be presented to this Court.

**B. Under Rule 37(b), Wynn's should be sanctioned by having the profit sharing issue determined against it.**

Rule 37(b)(2) of the Federal Rules of Civil Procedure states in part:

> (A) *For Not Obeying a Discovery Order*. If a party or a party's officer, director, or managing agent — or a witness designated under Rule 30(b)(6) or 31a(4) — fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. . . .

This is followed by a non-exhaustive list of remedies and the Court has the power to issue any sanction it deems appropriate. *See Anderson v. Foundation for Advancement, Education and Employment of American Indians*, 155 F.3d 500, 504 (4th Cir. 1998);

5

*Thompson v. U.S. Dept of Housing and Urban Development,* 219 F.R.D. 93, 101 (D. Md. 2003). Justice is the central factor in a sanctions order under Rule 37(b). *See Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998); *Harris v. City of Philadelphia*, 47 F.3d 1311 (3d Cir. 1995). The sanction should be no more severe than necessary. *See Wilson v. Volkswagen of Am.*, 561 F.2d 494 (4th Cir. 1977).

Because Wynn's noncompliance has prejudiced Bradley's ability to present evidence on this issue, the Court should sanction it. In defiance of this Court's profit sharing Order, Wynn's has refused to provide or explain the underlying formula or calculus. Instead of compliance, Wynn's intentionally submitted sworn testimony from a person from whom Wynn's has concealed the existence of the Wynn's-CAC profit sharing agreement. Under Rule 37(b)(2)(A)(i), this Court can direct "that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Wynn's willful violation of this Court's order has kept Bradley from accessing, understanding, and presenting the entire agreement between Wynn's and CAC, and how money flows between them.

As a sanction, the Court should direct that, for purposes of this action, the following is to be presented to the trier of fact:

1. As part of their agreement, Wynn's and CAC have a secret profit sharing plan.

2. As part of this case, Wynn's violated this Court's order that required it to explain that profit sharing plan to Ms. Bradley.

3. Under its agreement with CAC, Wynn's can make a profit even when CAC dealers sell service contracts on ineligible vehicles.

The Court should also find that Wynn's is in contempt of this Court's discovery order.

## II.

## WYNN'S SHOULD BE SANCTION BECAUSE IT HAS VIOLATED ITS DUTY TO PROVIDE A KNOWLEDGEABLE WITNESS.

**A.  A corporation that fails to produce a knowledgeable witness at its deposition should be sanctioned.**

Rule 37(d) of the Federal Rules of Civil Procedure states in part:

> Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection.
>
> (1) *In General.*
>
> (A) *Motion; Grounds for Sanctions.* The court where the action is pending may, on motion, order sanctions if:
>
> (i) a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition; or
>
> (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.
>
> (B) *Certification.* A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.
>
> (2) *Unacceptable Excuse for Failing to Act.* A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).
>
> (3) *Types of Sanctions.* Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)—(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

7

Under the list of remedies in Rule 37(b)(2)(A)(i) the Court has the power to craft the sanction it deems appropriate. *See Anderson v. Foundation for Advancement, Education and Employment of American Indians*, 155 F.3d 500, 504 (4th Cir. 1998); *Thompson v. U.S. Dept of Housing and Urban Development,* 219 F.R.D. 93, 101 (D.Md. 2003). Justice is the central factor in a sanctions order under Rule 37(b). *See Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998); *Harris v. City of Philadelphia*, 47 F.3d 1311 (3d Cir. 1995). The sanction should be no more severe than necessary. *See Wilson v. Volkswagen of Am.*, 561 F.2d 494 (4th Cir. 1977).

Under Rule 30(b)(6) of the Federal Rules of Civil Procedure, because of the corporation's duty to investigate facts prior to deposition, a corporation cannot introduce evidence contrary to its corporate deposition.

> Rule 30(b)(6) explicitly requires UCC to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition. This interpretation is necessary in order to make the deposition a meaningful one and to prevent the "sandbagging" of an opponent by conducting a halfhearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of the discovery process.
>
> The Court understands that preparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business. UCC does not fulfill its obligations at the Rule 30(b)(6) deposition by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available, and then at the trial argue a different position. UCC seems now to concede that it could not take such a position at the deposition and then use its own documents or personnel to so testify at trial. However, it claims a right to deny knowledge or position now, but then at trial to rely on the documents and testimony of others or to at least present argument that the evidence presented by others does not reflect the state of facts as contended by those parties.

> This suggested procedure assumes that the attorneys can directly represent UCC's interest on their own as opposed to merely being a conduit of the party. This, of course, is not true. If a corporation has knowledge or a position as to a set of alleged facts or an area of inquiry, it is its officers, employees, agents or others who must present the position, give reasons for the position, and, more importantly, stand subject to cross-examination. A party's trial attorney normally does not fit that bill. Therefore, if a party states it has no knowledge or position as to a set of alleged facts or area of inquiry at a Rule 30(b)(6) deposition, it cannot argue for a contrary position at trial without introducing evidence explaining the reasons for the change.

*U.S. v. Taylor*, 166 F.R.D. 356, 362 (M.D. N.C. 1996). This Magistrate Judge's decision was adopted by the District Court Judge who dismissed the corporation's contention "that it should not be held responsible for preparing its Rule 30(b)(6) deposition witnesses at the time of their depositions." *U.S. v. Taylor*, 166 F.R.D. 367 (M.D. N.C. 1996).

**B.   Wynn's should be sanctioned because in several areas it did not produce a knowledgeable witness even after this Court's decision on its motion for a protective order to limit the areas of inquiry.**

On August 14, 2014, Bradley prepared a corporate deposition notice for Wynn's and sent it to Wynn's counsel. It identified seventeen areas of inquiry and selected September 2, 2014, as the date for the deposition (See Document 39-1, pg 1-3). On August 22, 2014, Wynn's filed its first Motion for a Protective Order (Doc. 39). Wynn's sought to limit several areas of inquiry, including the following:

-Area 3 regarding agreements between CAC and Wynn's and Phoenix American companies, including pricing issues and profit sharing;

-Area 8 regarding the dealer cost of service contracts;

-Area 9 cost and terms of a Wynn's service contract that covers hybrids; and

-Area 13 regarding connections between Wynn's employees, officers, and directors, and three industry groups.

9

A hearing was held before Magistrate Judge James G. Welsh on Thursday, August 28, 2014, at 10:30 a.m., on Wynn's Motion. At that hearing, Wynn's repeatedly asserted that Phoenix American had nothing to do with the Bradley transaction, and among other limitations, the Court agreed that the terms of any contracts with Phoenix American would not need to be disclosed. Other than to limit Area 3 above to exclude the terms of any contracts with Phoenix American, Wynn's motion regarding the four areas above was denied. Bradley then submitted a modified deposition notice. (Exhibit A). As more fully set forth in Section I above, the subsequent hearing on September 11, 2014, on Wynn's Motion for Reconsideration (Doc. 49) modified the level of required detail of the profit sharing plan.

Even though its Motion for Protective Order was denied in several respects, on each of the five listed areas below, Wynn's corporate designee was not prepared to give testimony. Consequently, Wynn's violated its duty to provide a knowledgeable witness. Therefore, Wynn's should be sanctioned for each area. Bradley requests either that certain factual issues be determined in her favor or that Wynn's be prohibited from claiming to know matters that its corporate designee did not know.

**1. Under Area 2**, Wynn's did not provide a witness who was able to discuss the flow of information between CAC and Wynn's about credit and rebates for the Bradley transaction. Specifically, when Wynn's corporate deponent was asked about some bank records that had been provided (attached here as Exhibit E and F, deposition exhibits 14 and 15), he had no idea what these were. (Exhibit D: 102:1-103:19). The flow of money between CAC and Wynn's is a communication between them, and some type of CAC record called "Credit Acceptance Achbatch 102912 1101" and "Credit Acceptance

10

Achbatch 091112 1101" is referenced on these documents. Furthermore, some other type of record or electronic document must exist that shows the breakdown of whatever numbers are hidden by the redaction. Because Wynn's chosen designee knew nothing about these bank records, Wynn's should not be able to know more about them after the close of discovery. For instance, in support of its Motion for Summary Judgment, Wynn's now claims to know what Exhibit E and F are, and further that they have amounts related to the Bradley transaction reflected in the redacted numbers. (See Brooks Declaration, Doc. 60-3, Para. 13 and 15). Because Wynn's did not know this information at its corporate deposition, it cannot present such evidence now. Bradley asks Wynn's be prohibited from offering any evidence that it sent back to CAC any money that CAC sent it.

**2. Under Area 3**, as fully set forth in Section I (A)(1) above, incorporated here by reference, this witness was not prepared to discuss, explain, or present the underlying calculus or the formula for the profit sharing plan between CAC and Wynn's. He had never seen the text of the Profit Sharing Plan and did not even know it existed. Bradley asks Wynn's be prohibited from offering any evidence or argument that it cannot make a profit through its profit sharing plan even when its dealers sell Wynn's contracts on ineligible vehicles.

Additionally, under Area 3, Wynn's was to provide a witness to discuss the pricing and vehicle eligibility of Wynn's service contracts under its agreement with CAC. The corporate designee did not know how rate charts were determined and Wynn's counsel instructed the witness not to answer questions about vehicle eligibility. (Exhibit D: 83:1-84:16). Because Bradley was prohibited from exploring this area, Bradley asks

11

that it be deemed a fact that Wynn's and CAC set the pricing and vehicle eligibility such that the program would be profitable for each even when dealers sold some service contracts on ineligible vehicles.

**3. Under Area 8**, the witness was to be knowledgeable about the dealer cost for the Wynn's service contracts available for Armstrong Auto to sell. Wynn's did not know this information at its corporate deposition, nor what chart it came from. (Exhibit D: 183:8-184:12). Eventually, with help from counsel from both Wynn's and Bradley, the corporate designee was able to calculate it. (Exhibit D: 184:15-92:1-185:18). Bradley was prohibited from exploring this area of inquiry beyond just the number because the witness did not know what chart showed the actual number. Bradley asks Wynn's be prohibited from offering any evidence about the "dealer cost" in the Bradley transaction, and further that it be deemed admitted that pursuant to its Dealer Agreement with Armstrong Auto, the dealer cost that was to be sent Wynn's was the number identified at its corporate deposition.

**4. Under Area 9**, the witness was to be knowledgeable about the service contracts that Wynn's does make available on hybrid vehicles, specifically the cost and terms. The witness was not prepared to answer questions about the various costs and terms of the service contracts that Wynn's does make available on hybrid vehicles and that its agent could have sold. (Exhibit D: 131:4-133:24). Because Wynn's did not know this information at its corporate deposition, it cannot present such evidence now nor can it contest that Armstrong Auto could have chosen a service contract that covered a hybrid vehicle. Bradley asks Wynn's be prohibited from offering any evidence that Armstrong

12

Auto could not have sold a service contract on a hybrid vehicle, and that it be deemed that he could have done so to Ms. Bradley.

**5. Under Area 13**, the witness was to be knowledgeable about the connection between officers of Wynn's and the three identified groups.  The witness was not prepared to answer questions about the connection of Mr. Brooks, the President of Wynn's, to those three groups, nor which other members, officers, and directors were associated with these groups. (Exhibit D: 134:4-136:25).   He admitted he did nothing to prepare for this area. (Exhibit D: 137:1-9).  Because Wynn's did not know this information at its corporate deposition, it denied Bradley an opportunity to learn about these connections.  Bradley asks that for purposes of this action, it be deemed that Wynn's officers and directors are high-ranking members of these three organizations.

## Conclusion

Bradley respectfully requests that the Court find that Wynn's violated this Court's discovery Order regarding the Wynn's-CAC Profit Sharing Plan, and that Wynn's failed to produce a knowledgeable witness at its corporate deposition.  Bradley further asks that the sanction for each violation be as set forth above.

>PENNY L. BRADLEY
>
>By:  Counsel

Respectfully submitted,

s/Thomas D. Domonoske
Thomas D. Domonoske VSB #35434
461 Lee Avenue
Harrisonburg, VA 22802
540-442-7706

Timothy E. Cupp  VSB No. 23017

13

Shelley Cupp Schulte, P.C.
1951-D Evelyn Byrd Avenue
P.O. Box 589
Harrisonburg VA  22803-0589
Phone: (540) 432-9988
Facsimile:  (804) 278-9634
e-mail: cupp@scs-work.com
Counsel for Penny L. Bradley, Counter-Plaintiff

## CERTIFICATE OF SERVICE

I, Thomas D. Domonoske, certify that a true copy of this Motion for Sanctions was delivered by electronic filing via ECF to all counsel of record on this 30th day of September, 2014.

  /s Thomas D. Domonoske
Thomas D. Domonoske