UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

WYNN'S EXTENDED CARE, INC.,
    Plaintiff and Counter-defendant

v.                                                                          Case Number: 5:13-cv-00114

PENNY L. BRADLEY,
    Defendant and Counter-plaintiff.

## BRADLEY'S MEMORANDUM IN REPLY TO WYNN'S OPPOSITION TO BRADLEY'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

As set forth in Bradley's Motion for Partial Summary Judgment (Doc. 55) and her Memorandum in Support (Doc. 56), she is entitled to summary judgment on two issues: that Wynn's Extended Care, Inc., (Wynn's) is liable for the misrepresentations by Armstrong Auto, Inc. ("Armstrong") regarding the Wynn's contract, and that Wynn's violated the Virginia Consumer Protection Act (VCPA). In its Opposition Memorandum (Doc. 87), except for Bradley's Undisputed Fact Number 11, Wynn's does not dispute any of the other facts that Bradley set forth as both material and undisputed. Instead, Wynn's asserts that the undisputed facts are either immaterial or taken out of context. As for Undisputed Fact 11, Wynn's "dispute" regarding the August 28, 2012, letter is of no consequence. Wynn's also provides additional facts that it claims preclude summary judgment as requested by Bradley. As more fully set forth below, although Bradley disputes some of Wynn's additional facts, none of the facts provided by Wynn's raises any material issue of fact regarding the summary judgment requested by Bradley. Accordingly, summary judgment should be granted to her as requested.

1

# A.
## WYNN'S IS LIABLE FOR ARMSTRONG'S MISREPRESENTATIONS REGARDING THE WYNN'S CONTRACT THAT ARMSTRONG OFFERED TO SELL BRADLEY.

Bradley has requested summary judgment on the grounds that Armstrong acted under apparent authority as Wynn's agent to represent what Wynn's coverage applied to her car, to offer it to her, and to answer her questions about the August 28 letter. Wynn's has not disputed that it makes advertising materials generally available to all its dealers that hold the dealers to be the person to help the consumer determine which Wynn's coverage should be selected. The August 28 letter is also a specific representation to Bradley to take her questions to Armstrong. At the time of the sale, Armstrong represented that the car she wanted to buy was eligible for coverage, and Bradley relied on that representation. Wynn's has pointed to no limitation on Armstrong's apparent authority to make that representation or to answer questions about the August 28 letter. Under *Mosell Realty Corp. v. Schofield,* 183 Va. 782, 33 S.E.2d 774, 777 (1945), Wynn's cannot "deny that [Armstrong's] apparent authority is real."

The limitation on Armstrong's authority in its contract with Wynn's has no applicability to the "apparent authority" analysis. Wynn's does not claim that Bradley knew of this contract or the limitation. Furthermore, Wynn's testified at its corporate deposition that Armstrong was its agent for purposes of selling its contract (see Doc. 88-1, Wynn's Corporate Deposition, 139:5-7; currently subject of motion regarding sealing), and such testimony is entirely consistent with the authority given in the Dealer Agreement for Armstrong to sell Wynn's contracts. The apparent authority analysis by its very nature applies to actions taken by an agent beyond the agent's actual contractual

authority with its principal. Regarding agency by estoppel (or apparent agency), Bradley has defended against Wynn's summary judgment on these grounds and cases like *Sanchez v. Medicorp* are discussed in her Opposition to Wynn's Motion for Summary Judgment. (Doc. 88). For Bradley's summary judgment motion, no facts are in dispute that Armstrong had apparent authority to make his representations.

In an effort to avoid summary judgment, Wynn's repeatedly misstates the evidence before the Court. For instance, on page 8 of its Memorandum (Doc. 87), Wynn's asserts "that Mr. Armstrong also informed Bradley that there would be no VSC until Wynn's received and approved the Application. (Doc 87-1, Dep. Armstrong Auto, pp. 77, 79.)." A review of this deposition testimony shows that Armstrong repeatedly testified that Bradley was told the coverage would not be effective "until Wynn's received it." (See 77:1-10, and 16-18). Although Armstrong admits that he knew that Wynn's had to both receive it and approve it, his testimony is that Bradley was only told the "receive" step. An additional misstatement of the evidence is Wynn's claim that the August 28, 2012, letter "makes no reference to directing questions about Wynn's to Armstrong Auto ." (Doc. 87, pg. 11). This short letter from Wynn's about its action states "contact your selling dealership with any questions." No jury issue is raised about whether the reference "any questions" includes questions about Wynn's actions.

Finally, Wynn's improperly offers evidence contrary to its 30(b)(6) deposition testimony. At its deposition on September 15, 2014, Wynn's did not know when money was exchanged with CAC and could not explain any connection between its redacted bank records and the Bradley transaction; this lack of knowledge is the subject of Bradley's Motion for Sanctions (Doc. 76). Thus, on September 15, 2014, Bradley was

3

prohibited from exploring this area at Wynn's deposition, and nothing in the account records that have been sealed by Order of this Court shows any breakdown of any dollar amount, nor any connection to Bradley's transaction.  Just two days later, its President signed a Declaration (Doc. 87-4) that asserts that Wynn's not only knows the connection between the redacted bank records and the Bradley transaction, but also claims to know how much money from the Bradley transaction is embedded within the redacted numbers.  Furthermore, although Wynn's states that Armstrong Auto was only authorized to sell one form of Wynn's service contract under the Dealer Agreement, its deposition testimony that Armstrong could sell other Wynn's contract is consistent with the absence of any limitation in the Dealer Agreement. (See Doc. 88-1, Wynn's Corporate Deposition, 133:14-18 currently subject of motion regarding sealing).

No material facts are in dispute on the elements to establish Armstrong's apparent authority.  Therefore, partial summary judgment is properly entered on this issue in favor of Bradley.

**B.**

**WYNN'S VIOLATED THE VCPA REGARDING THE WYNN'S CONTRACT THAT ARMSTRONG OFFERED TO BRADLEY.**

Wynn's Opposition brief misstates several important aspects of Bradley's VCPA claim.  First, Wynn's attempts to write the word "offer" out of Va. Code § 59.1-200(A)(8).  Then, Wynn's attempts to write all the elements of fraud into a VCPA claim.  Also, Wynn's inappropriately narrows the word "loss" in Va. Code § 59.1-204(A).  Finally, Wynn's misstates the undisputed facts about Bradley's efforts to cancel the sale and the loss she has suffered.

4

Wynn's attempts to write the word "offer" out of Va. Code § 59.1-200(A)(8). Subsection 8 of Va. Code § 59.1-200(A) uses the disjunctive term "advertise or offer."

> "The rules of statutory interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd. On the contrary, it is well established that every act of the legislature should be read so as to give reasonable effect to every word ...." *Jones v. Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984). "[E]very part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." *Hubbard v. Henrico Ltd. P'ship*, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998)."

*Lynchburg Division of Social Services v. Cook*, 276 Va. 465, 483, 666 S.E.2d 361, 370 (2008). Thus, Subsection 8 applies to advertisements and to offers to sell goods or services. In this instance, an offer was made and it was accepted. Specifically, Bradley was told by Armstrong that her car was eligible for coverage. As set forth within Subsection 8, because the coverage was not provided as offered, a *prima facie* case has been established. Because the facts are not in dispute, the violation is conclusively proven.

Wynn's improperly attempts to write all the elements of fraud into a VCPA claim. In *Wilkins v. Peninsula Motor Cars*, 266 Va. 558, 587 S.E.2d 581 (2003), the plaintiff recovered damages on claims for both common law fraud and a violation of the VCPA. The Virginia Supreme Court held that the case "involve[d] causes of action with different elements of proof and potentially duplicative damage awards." *Id.* at 562, 587 S.E.2d at 584. Under Va. Code § 59.1-197, the VCPA is "remedial legislation," and thus should "be construed liberally to remedy the mischief to which [it is] directed in accordance with the legislature's intended purpose." *Carmel v. City of Hampton*, 241 Va. 457, 460, 403 S.E.2d 335, 337 (1991). *See also, e.g., Board of Sup. v. King Land Corp.*, 238 Va. 97, 102-03, 380 S.E.2d 895, 897-98 (1989) (describing the history of the "mischief rule").

5

The various subsections of 59.1-200(A) provide for many different types of violations. Committing a "fraud" is merely one of the ways to violate Va. Code § 59.1-200(A)(14). Although reliance is an element of fraud, a VCPA claim is statutorily based and looks to whether a violation occurred, and then whether a loss occurred. Depending on the context of the violation, some reliance may be necessary to prove damages resulting from the violation, but such specific causation is not the equivalent of an element for all violations.

Wynn's also inappropriately narrows the word "loss" in Va. Code § 59.1-204(A). Wynn's misstates the elements of a VCPA claim when it claims that "there is no resulting damage that flows from the actions of Wynn's." (Doc. 87, pg. 23). Under Va. Code § 59.1-204(A), "[a]ny person who suffers loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater." Thus, a VCPA claim requires a "loss" which then allows for recovery of actual damages or a minimum statutory award. For Ms. Bradley, the loss is undisputed; she wanted to buy the car only if it came with extended coverage, was told that it came with Wynn's coverage, and then she did not get the Wynn's coverage. At minimum, her "loss" was the loss of this coverage she was offered. Although her "actual damages" as a result of that loss may be disputed, the VCPA element is a loss and that loss is shown by undisputed facts.

Although not pertinent to whether a VCPA violation occurred, Wynn's misstates the undisputed facts about Bradley's efforts to cancel the sale. Contrary to the known evidence, Wynn's asserts that Bradley did not request that her vehicle be repurchased, (Doc. 87, pg. 5), and that "Bradley cannot claim any damages *whatsoever* resulting from

6

the conduct of Wynn's." (Doc. 87, pg. 23). First, Bradley's deposition is clear that although she did not personally request repurchase when she found out that no service contract existed, she retained counsel and her lawyers made this request on her behalf. (Exhibit 1, Bradley Deposition, 88:15-89:13, and Exhibit 2, the repurchase request letter sent by counsel, Exhibit 6 to the Bradley Deposition).

Finally, in a misguided effort to defend against the VCPA claim, Wynn's misstates the undisputed facts about the damages caused by Armstrong's misrepresentations. First, no dispute exists that Armstrong did not refund the taxes that Bradley paid on the service contract. (Doc. 88-3, Armstrong Corporate Deposition, 106:22-25); nor did Wynn's. (Doc. 88-6, Wynn's Response to Bradley's Interrogatories, Number 10, and 11; Doc. 88-1, Wynn's Corporate Deposition, 185:7-18, currently subject to a motion regarding sealing). Second, Bradley never received the full refund from the canceled service contract. If the service contract was not included in the transaction, the amount financed would have been reduced from $13,339.00 by $1,619.50 to $11,719.50. (Doc. 88-3, Armstrong Corporate Deposition, 124:5-125:8 and 126:23 to 127:18, and the corresponding mathematical computation). Because the presence of the service contract had no effect on the interest rate, either the monthly payment would have been less or Armstrong would have shortened the term of the loan. (Doc 88-3, Armstrong Corporate Deposition, 124:13-125:8). Credit of $11,719.50 at 24.99% interest to be paid in monthly payments of $401.93 requires 44 payments plus a final monthly payment of $536.48. (Doc. 88-4, Armstrong Admission by counsel). Thus, if a complete refund had been made to Bradley, the total of payments she would have owed under the Retail Installment Contract without the service contract would have been $18,221.40. Instead

7

of this amount, after CAC applied whatever money was exchanged between it and Wynn's to Bradley's account, CAC showed the total of payments as $20,196.33. (Exhibit 3, Bradley Declaration with attached CAC letter sent February 15, 2013). Consequently, because of Armstrong's misrepresentations, Bradley ended up owing more money than if no service contract had ever been requested or discussed.

## CONCLUSION

For the reasons stated in her Motion and as further explained above, Bradley requests partial summary judgment on the issue that Wynn's is liable for Armstrong's misrepresentations, and that Wynn's violated the VCPA.


Respectfully submitted,

s/Thomas D. Domonoske
Thomas D. Domonoske VSB #35434
461 Lee Avenue
Harrisonburg, VA 22802
540-442-7706

Timothy E. Cupp  VSB No. 23017
Shelley Cupp Schulte, P.C.
1951-D Evelyn Byrd Avenue
P.O. Box 589
Harrisonburg VA  22803-0589
Phone: (540) 432-9988
Facsimile:  (804) 278-9634
e-mail: cupp@scs-work.com


## CERTIFICATE OF SERVICE

I, Thomas D. Domonoske, certify that a true copy of this Response was delivered by electronic filing via ECF to all counsel of record on this 16th day of October, 2014.

 /s Thomas D. Domonoske
Thomas D. Domonoske