IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF VIRGINIA

HARRISONBURG DIVISION

---

WYNN'S EXTENDED CARE, INC.,                )

Plaintiff and Counter-Defendant,  ) Case Number

v.                                         ) 5:13-cv-00114

PENNY L. BRADLEY,                          )

Defendant and Counter-Plaintiff. )

---

Deposition of 30(B)(6) CORPORATE

REPRESENTATIVE OF ARMSTRONG AUTO SALES, INC.

BY TRAVIS W. ARMSTRONG

Harrisonburg, Virginia

Wednesday, September 3, 2014

9:15 a.m.

Pages 1 - 165

Reported by:  Karen L. Hart, RMR, CRR

1  system?
2      A.    No, sir, not that I recall.
3      Q.    One of the areas of inquiry in the
4  deposition notice which is Exhibit 2 to your -- to
5  the deposition of Armstrong Auto is the dealer kit
6  from Wynn's Extended Care.  I think I also -- I think
7  I earlier asked you about a dealer kit.
8      A.    Yes, sir.
9            MR. CUPP:  I'm going to show you some
10 documents that were produced to us by Wynn's
11 yesterday.  I have copied them the way I received
12 them.
13
14           (Armstrong Deposition Exhibit No. 9 was
15 marked for identification and attached to the
16 transcript.)
17
18 BY MR. CUPP:
19     Q.    So the first one is marked Exhibit 9.  And
20 I'll ask you to look at this two-page document and
21 tell me whether you have ever seen this.
22     A.    I have not.
23     Q.    Okay.  Were you ever told anything about a
24 claims procedure in connection with the Wynn's
25 service contract?

1    A.    I don't believe so.  I think that's
2 something that we kind of figured out on our own.
3    Q.    Okay.  In any event, you knew that you
4 were a licensed repair facility; right?
5    A.    Yes, sir.
6    Q.    So you did not see Exhibit 9?
7    A.    No, sir.
8          MR. CUPP:  Let me show you what's been
9 marked as Exhibit 10 to your deposition, the
10 company's deposition.
11
12         (Armstrong Deposition Exhibit No. 10 was
13 marked for identification and attached to the
14 transcript.)
15
16 BY MR. CUPP:
17   Q.    I'll ask you to take a minute to look at
18 Exhibit 10 and tell me if you can identify this
19 document.
20   A.    That's nothing that I've seen before.
21   Q.    Okay.  Other than the retail rate sheet
22 that we looked at earlier in this deposition, did you
23 receive -- and the Wynn's dealer contract that was
24 Exhibit 3, did you see any documents from Wynn's --
25 and again, also accepting -- let me try this whole

1 thing again.
2            Is it true that you did see Exhibit 3 from
3 Wynn's, the dealer agreement; you had seen a dealer
4 agreement?
5      A.   Yes.
6      Q.   And you signed it?
7      A.   Yes, sir.
8      Q.   You had seen the form for the service
9 contract through Wynn's; right?
10     A.   Yes, sir.
11     Q.   But you had never read it up through the
12 time that you included it as part of the Bradley
13 transaction; right?
14     A.   Yes, sir.
15     Q.   And you had seen the rate sheet.
16     A.   Yes, sir.
17     Q.   That rate sheet was -- I'm not sure what
18 number that was. Let's see if we have it there in
19 that stack.
20     A.   Number 4.
21     Q.   Right, Number 4, the rate sheet.
22           Other than those three documents or copies
23 of those three documents, had you received any
24 document from Wynn's Extended Care, Inc.?
25     A.   No, sir.

1          MR. CUPP: What was the last one we did?
2          THE COURT REPORTER: 10.
3          MR. CUPP: Give me Number 10 there,
4   please.
5
6          (Armstrong Deposition Exhibit No. 11 was
7   marked for identification and attached to the
8   transcript.)
9
10  BY MR. CUPP:
11      Q.   So I'm showing you what's been marked as
12  Exhibit 11 to this deposition and I'll ask you --
13  understanding that you've already said that you
14  haven't seen any other documents, I'll ask you if
15  this is a document you ever saw in relation to the
16  Wynn's service contract program.
17      A.   No, sir.
18      Q.   Today is the first day you've seen that
19  document?
20      A.   Yes, sir.
21
22          (Armstrong Deposition Exhibit No. 12 was
23  marked for identification and attached to the
24  transcript.)
25

1  BY MR. CUPP:
2      Q.   I'm handing you what's been marked as
3  Exhibit 12 to this deposition and I'll ask you to
4  look at that document.  Have you ever seen that?
5      A.   No, sir.
6      Q.   Okay.  Were you aware -- strike that.
7           Did anyone tell you that Wynn's service
8  contracts are insured?
9      A.   No, sir, I was unaware of that.
10     Q.   Okay.  And this document, Exhibit 12,
11 says -- if I could get you to look back at that, at
12 the -- in the middle of the page, the last sentence
13 of that paragraph says, "As a national leader in the
14 warranty business, we are committed to providing you
15 with profitable opportunities."
16          Do you see that?
17     A.   Yes, sir.
18     Q.   What profitable opportunities did Wynn's
19 Extended Care provide to you?
20     A.   I guess the ability to make my vehicles
21 more valuable by having an extended warranty on them.
22     Q.   All right.  Have you undertaken to --
23 well, strike that.
24          Are you still selling Wynn's Extended Care
25 service contracts?

```
 1      A.    We do have the ability, but it's very few
 2  that we have.
 3      Q.    Do you have another service contract that
 4  you're selling?
 5      A.    No, sir.  We have one that we give away,
 6  but not another one that we sell.
 7      Q.    And which one do you give away?
 8      A.    Cars.
 9      Q.    Okay.  And how are you able to give it
10  away?
11      A.    Our cost is $99, so we provide it to our
12  customers at no extra charge just to give them an
13  additional level of warranty and peace of mind.
14      Q.    How many Wynn's contracts -- well, that's
15  something we're looking for, right?
16      A.    Yeah, I'm not sure what's taking so long.
17  She's on the phone with the company now, trying to
18  get that information.
19      Q.    What company is she --
20      A.    Frazer, our DMS system.
21      Q.    F-r-a --
22      A.    -- z-e-r.
23      Q.    And is that a software provider?
24      A.    Yes, sir.  I guess that's what you would
25  call it, yes.
```